**DALLAS BUILDING & LOAN ASS'N v. HENRY et ux.**

No. 13447.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 6, 1936.

Rehearing Denied Dec. 4, 1936.

Thompson, Knight, Baker & Harris and Marshall Thomas, all of Dallas, for appellant.

Earl E. Miller and Geo. Clifton Edwards, both of Dallas, for appellees.

DUNKLIN, Chief Justice.

The Dallas Building & Loan Association instituted this suit against George L. Henry and wife, Lizzie Henry, in trespass to try title to a lot situated in the city of Dallas.

In addition to a general demurrer, general denial, and a plea of not guilty, the defendants attacked certain links in plaintiff's chain of title. The grounds upon which those instruments were challenged were sustained, and, by reason thereof, plaintiff was denied a recovery, and the property and title was awarded to defendants upon their cross-action.

Plaintiff made out a regular chain of title through duly recorded instruments, and the only issues involved on this appeal relate to grounds upon which some of the links in plaintiff's chain of title were invalid.

The disputed instruments were as follows: (1) A general warranty deed, dated November 1, 1927, from the defendants George L. Henry and wife to L. J. Taylor and T. K. Irwin, reciting a cash consideration paid of $500.

(2) A special warranty deed from L. J. Taylor and T. K. Irwin to George L. Henry and wife, dated October 25, 1928, reciting a cash consideration of $10 and a promissory note in the sum of $750 payable to the order of J. Foree Morgan.

(3) A conveyance, of date October 25, 1928, from J. Foree Morgan to P. P. Martinez of $750 vendor's lien note, noted above, and the lien securing the same.

(4) A deed of trust from George L. Henry and wife, of date October 25, 1928, given to secure payment of four notes, aggregating $750, with the recital that the same were given in renewal and extension of $750 vendor's lien note, noted above.

(5) A mechanic's lien contract between the defendants and J. S. Cordella, dated March 5, 1929, for improvements on the property in controversy in the sum of $1,800.

(6) Deed, dated April 3, 1929, from P. P. Martinez to plaintiff of the indebtedness secured by the deed of trust in favor of Martinez, noted above.

(7) A conveyance from J. S. Cordella to plaintiff, of date April 3, 1929, of the unpaid balance of $419.72 of the indebtedness represented by the mechanic's lien contract.

(8) Deed of trust, dated April 8, 1929, executed by defendants to secure their note to plaintiff in the sum of $1,450, executed as a renewal and extension of the indebtedness by Martinez and Cordella.

(9) Deed of trust, dated February 15, 1932, executed by the defendants in favor of plaintiff to secure a note in the sum of $1,394.58, given as a renewal of the $1,450 note last mentioned.

(10) Deed of conveyance executed to plaintiff by the trustee in the last-mentioned deed of trust, on November 1, 1932, executed under the power of sale given in the deed of trust to satisfy the debt therein secured.

George L. Henry was adjudged insane and was confined in the insane asylum at Rusk, and Mr. George Clifton Edwards was duly appointed as guardian ad litem to represent his interest in the suit, and he filed a pleading adopting the pleadings theretofore filed by Lizzie Henry, which included a cross-action for a cancellation of all the instruments referred to above as a cloud upon their title and for adjudication of title in the two defendants, free of those clouds.

The first instrument listed above, being the deed from the two defendants in favor of L. J. Taylor and T. K. Irwin, was attacked upon the ground that at the time it was executed the property therein described was the homestead of the defendants and was then being occupied by them as such, and that the purported conveyance was intended as a mortgage and not as a conveyance of title, and for that reason, and for the further reason that George L.

Henry was at that time insane and legally incompetent to bind himself by that instrument, it was void.

According to further allegations in defendants' pleadings, all the remaining instruments listed above, of date prior to the sale of the property by the trustee to the plaintiff under foreclosure proceedings, with the exception of the mechanic's lien contract with Cordella, were executed for the purpose of giving effect to the purported deed to Taylor and Irwin as a valid and binding conveyance; and that plaintiff had actual and constructive notice of all of those facts at the time it acquired the deed of trust under which it purchased the property at foreclosure sale by the trustee.

According to further allegations, the note executed by the defendants to Cordella in the mechanic's lien contract included a fictitious amount over and above the cost of the improvements, and the excess sum so included was a charge of usurious interest, which was therefore illegal and void, and plaintiff had actual and constructive notice of those facts also at the time it acquired the deed of trust under which it bought the property at foreclosure sale, and the mechanic's lien has been discharged by full payment of the amount due for those improvements.

After the suit was instituted, defendants were ousted of possession of the property by virtue of a writ of sequestration, sued out by plaintiff, and they sought a recovery of actual and exemplary damages therefor under allegations that such action by plaintiff was without probable cause and with malice.

Plaintiff's supplemental petition embodied a general denial of the allegations in defendants' pleadings and also pleaded specially that it was an innocent purchaser of the property for valuable consideration paid, relying in good faith upon the instruments theretofore recorded, and without any notice of the matters specially pleaded by the defendants, with a further plea of estoppel against the defendants to set up those defenses.

The record shows that the defendants were colored people, earning their livelihood by their daily labors; the defendant Lizzie Henry being employed as a domestic servant a portion of the time and her husband, George, working at different jobs. They acquired a lot 35x95 feet in a negro settlement in the suburban portion of the

city of Dallas, which they improved with a dwelling in keeping with their financial circumstances and local surroundings, the property being their homestead at the time the first instrument listed above was executed, and has been so claimed by them ever since. While they so owned and occupied the property, the defendant George L. Henry was arrested on a charge of rape, and he employed L. J. Taylor and T. K. Irwin, two Dallas attorneys, to defend him against that charge. Those attorneys represented him in the examining trial before the justice of the peace, where he was bound over by an appearance bond in the sum of $1,000 to await the action of the grand jury. Thereafter Mr. Irwin appeared before the grand jury in behalf of his client, and as the result of his efforts no indictment was returned, and the prosecution was dropped.

The attorneys charged a fee of $500 for their services, and, defendants being unable to pay it, they executed the purported deed listed above.

The following are special issues submitted to the jury with their answers thereto, omitting instructions that some of the issues would be considered only in the event of affirmative findings to preceding issues:

"1. Do you find from a preponderance of the evidence that the deed dated November 1, 1927, from George L. Henry and Lizzie Henry to Taylor & Irwin was intended by the parties as a mortgage to secure the payment of a lawyer's fee? Answer: Yes.

"2. Do you find from a preponderance of the evidence that at the time George L. Henry and Lizzie Henry executed the deed to Taylor & Irwin, the said George L. Henry did not have sufficient mental capacity to execute said deed? Answer: Yes.

"3. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, on or prior to April 8, 1929, had notice that George L. Henry did not have sufficient mental capacity to execute the deed to Taylor & Irwin inquired about in Special Issue No. 2? Answer: Yes.

"4. Do you find from a preponderance of the evidence that at the time George L. Henry and Lizzie Henry executed the note for $750.00 to J. Foree Morgan, the said George L. Henry did not have sufficient mental capacity to execute said note? Answer: Yes.

"5. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, or prior to April 8, 1929, had notice that George L. Henry did not have sufficient mental capacity to execute the note inquired about in special issue No. 4? Answer: Yes.

"6. Do you find from a preponderance of the evidence that on October 25, 1928, when George L. Henry and Lizzie Henry executed the deed of trust to J. L. Hill to secure the $750.00 lien to P. P. Martinez, the said George L. Henry did not have sufficient mental capacity to execute said deed of trust? Answer: Yes.

"7. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, on or prior to April 8, 1929, had notice that George L. Henry did not have sufficient mental capacity to execute the deed of trust inquired about in special issue No. 6? Answer: Yes.

"8. Do you find from a preponderance of the evidence that on March 5, 1929, when George L. Henry and Lizzie Henry executed the mechanic's lien to J. S. Cordella for $1,800.00, the said George L. Henry did not have sufficient mental capacity to execute said mechanic's lien? Answer: Yes.

"9. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, on or prior to April 8, 1929, had notice that George L. Henry did not have sufficient mental capacity to execute the mechanic's lien inquired about in special issue No. 8? Answer: Yes.

"10. Do you find from a preponderance of the evidence that on April 3, 1929, when George L. Henry and Lizzie Henry executed a deed of trust to J. G. Loving to secure a note for $1,450.00 payable to the Dallas Building & Loan Association, the said George L. Henry did not have sufficient mental capacity to execute said deed of trust? Answer: Yes.

"11. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, on or prior to April 8, 1929, had notice that George L. Henry did not have sufficient mental capacity to execute the deed of trust inquired about in special issue No. 10? Answer: Yes.

"12. Do you find from a preponderance of the evidence that on February 15, 1932, when George L. Henry and Lizzie Henry executed the deed of trust to J. G. Loving to secure the note for $1,394.58, payable to the Dallas Building & Loan Association, the said George L. Henry did not have sufficient mental capacity to execute the said deed of trust? Answer: Yes.

"13. Do you find from a preponderance of the evidence that any officer or agent of the Dallas Building & Loan Association, on or prior to February 15, 1932, had notice that George L. Henry did not have sufficient mental capacity to execute the deed of trust inquired about in special issue No. 13? Answer: Yes.

"14. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate George L. Henry and Lizzie Henry for actual damages, if any, sustained by them by reason of the issuance and levy of the alias writ of sequestration on or about July 20, 1933? Answer: $25.00.

"15. Do you find from a preponderance of the evidence that the plaintiff herein, Dallas Building & Loan Association, was prompted by malice towards the defendants George L. Henry and Lizzie Henry in causing the alias writ of sequestration to be issued and levied on or about July 20, 1933? Answer: Yes.

"16. What sum of money, if any, do you find as exemplary damages? Answer: $500.00.

"17. What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable value of the improvements made to the property of George and Lizzie Henry by J. S. Cordella? Answer: $343.92.

"18. What do you find from a preponderance of the evidence to be the reasonable rental value of the property involved herein per month since the 19th day of August, 1933? Answer: $15.00."

Appellant has not challenged the findings of the jury that the instrument first listed was intended by the parties as a mortgage to secure the payment of the lawyers' fees charged by Taylor and Irwin for representing George L. Henry in the criminal proceedings, nor the further findings of mental incapacity of George L. Henry to execute the different instruments, as shown in the verdict of the jury.

But the contention is made that the services rendered by Taylor and Irwin in defending George L. Henry in the criminal proceedings and the improvements on the home, made by Cordella under a mechanic's lien contract, were necessaries, and that Lizzie Henry's contracts to pay therefor while her husband was insane were valid and enforceable obligations, and that her further contract to repurchase the home from Taylor & Irwin was likewise binding for the same reason. In support of the contention that the services of the attorneys constituted a necessary, for which the wife could legally contract while the husband was insane, appellant cites Askey v. Williams, 74 Tex. 294, 11 S.W. 1101, 5 L.R.A. 176; Searcy v. Hunter, 81 Tex. 644, 17 S.W. 372, 26 Am.St.Rep. 837; and, in support of the contention that under the same circumstances the wife was legally bound upon a contract for the improvements on the home, made by Cordella, the following authorities are cited: McAfee v. Robertson, 41 Tex. 355; Westbrook v. Adams (Tex. Civ.App.) 17 S.W.(2d) 116; Green v. Windham, 115 Tex. 162, 278 S.W. 1101; Reynolds Mortgage Co. v. Gambill, 115 Tex. 273, 280 S.W. 531; Fullerton v. Doyle, 18 Tex. 3; Cheek v. Bellows et ux., 17 Tex. 613, 67 Am.Dec. 686; Slator v. Neal, 64 Tex. 222; Clark v. Wicker (Tex.Civ. App.) 30 S.W. 1114.

Testimony was introduced showing that J. Foree Morgan was engaged in the business of constructing and repairing improvements in that vicinity of Dallas; and, in order to make some repairs on the house and receive pay therefor, he had George and Lizzie Henry take a reconveyance of the property from Taylor and Irwin and execute the note for $750 recited in that deed, and, pursuant to the arrangement theretofore made by Morgan with P. P. Martinez, contemporaneously with the execution of that deed, Morgan executed an assignment of that note to Martinez, being the third in the list of instruments set out above, and at the same time procured George L. Henry and wife to execute the deed of trust to secure the payment of the $750 note, the deed of trust being the fourth instrument listed above. But Morgan did not acquire a mechanic's lien in writing to secure payment for such improvements.

The evidence further showed the mechanic's lien contract with Cordella stipulated an agreement of the defendants to pay the sum of $1,800, which was more

than the cost of the improvements to be made under that contract, in order that Cordella might negotiate a sale of the contract to a better advantage to himself.

Louis J. Hexter testified that he was a licensed lawyer, but not practicing; that he was employed by the Texas Union Title & Guaranty Company and attended to the matter of getting up the abstract of title and title insurance on the property, and as such advised P. P. Martinez and the plaintiff company of the validity of the transaction involved in the purchase of the $750 vendor's lien note from J. Foree Morgan and the deed of trust given to secure the same and the deed of trust dated April 3, 1929, given by the defendants to secure the note of $1,450, the same being the eighth disputed instrument listed above, and also the renewal note and deed of trust of date February 15, 1932; and that all the money required for the consummation of those transactions was turned over to him and disbursed by him. The $750 turned over to him by P. P. Martinez for the purpose of closing the transaction with Morgan was disbursed by him as follows: To Taylor and Irwin, $500, $100 to J. Foree Morgan, $61.42 to a carpenter working for Morgan, $30.19 to the Texas Union Title & Guaranty Company for the title insurance policy and filing and recording the instruments, and $10 to Charles Humphrees.

His testimony further showed that on April 3, 1929, when the plaintiff took its deed of trust from the defendants and their note in the sum of $1,450, plaintiff turned over to him $1,431.65 to close the transaction and that money was disbursed by the witness as follows: To P. P. Martinez, $1,040.28 in satisfaction of the vendor's lien note he then held for $750, to J. S. Cordella, $343.92 for improvements done by him under the mechanic's lien contract; $21.59 taxes; and $26.48 to the title company for whom the witness was working, for premium charged for title insurance and fees for recording the instruments.

■ And, as shown by recitals in the deed of trust in favor of plaintiff, of date February 15, 1932, that instrument was given to secure a note in the sum of $1,394.58 as a renewal and extension of the $1,450 note secured by the former deed of trust of April 3, 1929. The amount disbursed by Hexter shown above for the improvements under the Cordella contract and for taxes on the property were the only ones that could be charged as a lien upon the prop-

erty in controversy on any valid theory; and the evidence showed that the amount collected by plaintiff on the debt exceeded the aggregate of those two sums.

The findings that the plaintiff through its agent had notice of such lack of mental capacity on the part of George L. Henry in the various transactions shown in their verdict have sufficient support in the evidence.

■ The attorneys' fee in question could not be charged as a lien on the property because, First, the testimony of the attorney Irwin shows that he was employed by George L. Henry and not by Lizzie Henry acting independently of him by reason of his insanity; second, the instrument executed to the attorneys was not in fact a deed but was a mortgage on the homestead, and invalid for that reason, independently of the further reason that George L. Henry was then insane; and, third, there was no finding by the jury that the fee charged the attorneys was reasonable, and no request from counsel for either party for the submission of that issue, and the burden was on plaintiff to show that the fee was reasonable. Donaldson v. Meyer (Tex. Com.App.) 261 S.W. 369; Shaw v. Gillespie (Tex.Civ.App.) 270 S.W. 1043, writ dismissed; Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115; Jones v. Meyer (Tex.Civ. App.) 248 S.W. 777.

■ Under the findings of the jury the plaintiff's plea of innocent purchaser and of estoppel is without merit. Mitchell v. Inman (Tex.Civ.App.) 156 S.W. 290, 291. We quote the following from 21 Corpus Juris, § 93, p. 1101: "In order to work an estoppel, the parties to a deed must be sui juris, competent to make it effectual as a contract."

■ We overrule appellant's further contentions that the findings of the jury of actual and exemplary damages for wrongfully suing out the writ of sequestration are without sufficient support in the evidence, tested by the rule controlling in such matters announced in authorities cited, such as 38 Corpus Juris, p. 398; 18 R.C.L. 1133; Lynch v. Burns (Tex.Civ.App.) 79 S.W. 1084; Graham v. Walters (Tex.Civ.App.) 45 S.W.(2d) 281; 13 Tex.Jur. p. 240.

In this connection, it is to be noted that the writ of sequestration was sued out and defendants disposed of their home with knowledge on the part of plaintiff prior thereto that defendant George Henry had executed the instruments in controversy.

without sufficient mental capacity to comprehend their legal effect. Foster v. Bourgeois, 253 S.W. 880, 885, by the Court of Civil Appeals, and Id., 113 Tex. 489, 259 S.W. 917, by the Commission of Appeals; Graham v. Walters (Tex.Civ.App.) 45 S. W.(2d) 281.

During their deliberations, the jury sent to the trial judge, through the court bailiff, this inquiry: "If from special issues of the charge involving mental capacities of George L. Henry, it is decided that the instruments are null and void, what disposition will be made of the property in question?"

The trial judge did not have the jury brought into open court but sent into the jury room by the bailiff this reply to the inquiry:

"I regret that this question cannot be answered by the court. To answer it would be to give you the effect of your answers. I can only tell you to follow the charge.
"Sarah T. Hughes."

Mr. Marshall Thomas, the attorney for plaintiff during the trial, was absent from the courtroom when the foregoing proceeding occurred, and, when he learned of the occurrence after the verdict was returned, he appeared in open court and reserved an exception to the action of the court in communicating with the jury otherwise than in open court.

The bill recites that before the judge sent to the jury room her reply she submitted the same to Mr. Thomas S. Walker and Mr. E. E. Miller, who indorsed their approval thereof, and the bill was qualified with the statement that Mr. Walker was an officer and assistant secretary of plaintiff, and was excused from the witness rule, upon request of Mr. Marshall Thomas, attorney for plaintiff, who stated at the time that "while Mr. Walker was an officer of plaintiff he was also an attorney and as such attorney asked that said Walker be excused from the rule." Also that, although Walker took no part in the trial except as a witness, he was present throughout the trial; that, after the case was submitted to the jury, Mr. Thomas, for the plaintiff, requested of the court permission to be excused from the courtroom on account of other business, with the statement that he would leave "Mr. Walker in charge of plaintiff's file, containing the exhibits that had been introduced in evidence by the plaintiff"; that Mr. Walker acted for and in behalf of plaintiff in approving what was done, and Mr. E. E. Miller's approval was for defendants.

 We conclude that the action of Mr. Walker in approving the court's action was binding on plaintiff, and therefore the error, if any, in the ruling was waived.

All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.