Dianne RICHARDS, Appellant,

v.

Barry SUCKLE, Appellee.

No. C14–92–01206–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 13, 1994.

Dianné Richards, Roy Beene, Houston, for appellant.

Rhett G. Campbell, David A. Furlow, Mitchell E. Ayer, Houston, for appellee.

Before ROBERTSON and CANNON, JJ., and MORSE, J., sitting by designation.

## OPINION

CANNON, Justice.

This is an appeal from a final judgment granting a judicial foreclosure based upon an equitable right of subrogation. The court below granted appellee's decree after a two day bench trial. Appellant brings six points of error. We affirm.

Land Futures, Ltd., conveyed land to South Lake Houston Joint Venture by warranty deed. Land Futures, Ltd., retained a vendor's lien and made the sale subject to a deed of trust. The vendor's lien was secured by a wrap around promissory note which, itself, incorporated by reference two other promissory notes in the amounts of $245,104 and $56,440. The note in issue is the $245,-104 promissory note (the "Note") included within the wraparound promissory note. The deed of trust and vendor's lien securing the Note were encumbrances upon the land.

240

South Lake Houston Joint Venture conveyed an undivided interest in the Note to Jerold Suckle. Both parties rearranged the original Note in a loan modification agreement, with South Lake Houston Joint Venture as maker, that assigned an undivided interest in the note to Jerold Suckle.

Jerold Suckle died and his undivided interest in the note passed to his brothers, Barry and Stephen, as tenants in common. South Lake defaulted on the Note and the Suckles foreclosed. On December 1, 1981, they became owners of the land as tenants in common, each owning an undivided fifty percent interest. Their interest remained subject to the indebtedness secured by the vendor's lien and deed of trust in favor of Land Futures, Ltd.

On October 30, 1985 Barry Suckle paid the principal and interest then due and owing on the note. On November 25, 1986, Barry Suckle paid off the remaining balance on the note. Barry Suckle made the payments to protect his interest in the land because his brother refused to pay any part of the note. Land Futures, Ltd. released the deed of trust of record on December 5, 1986. Suckle alleges that by making the payments, he became equitably subrogated to the rights of Land Futures, Ltd., including the security interest granted by the vendor's lien in the warranty deed and the deed of trust.

Barry Suckle filed suit against his brother. A substantial part of the suit concerned his brother's refusal to make payments on the note. On March 23, 1988, Stephen Suckle pledged his interest in the land to his attorney, Dianne Richards, by filing a deed of trust. On June 6, 1989, Dianne Richards foreclosed upon Stephen Suckle's interest in the land and recorded a trustee's deed.

On March 5, 1990, Barry Suckle amended his pleadings in his suit against his brother and sought only subrogation and judicial foreclosure. After a bench trial, the court awarded a judgment granting Barry Suckle's equitable subrogation to the deed of trust lien against Stephen Suckle's interest in the land, including interests transferred to appellant and Suckle's ex-wife, Luvonia Casperson. The foreclosure was accomplished through a sheriff's sale on October 6, 1992

and Barry Suckle was the highest bidder. Richards appealed.

Appellant briefed her first four points of error collectively, therefore, we will address them in a like fashion. In her first point, she alleges that there was no agreement that appellee's advancement of funds to pay the vendor's lien was to be a lien against the property. In her second point, appellant argues that appellee did not have a written instrument securing any lien against the property. In her third point, she further argues that if appellee did hold a "lien of equitable subrogation," it was no more than a right of a creditor, and not that of superior legal title held by the vendor against the property. Finally, appellant asserts that judicial foreclosure was improper because appellee had an adequate remedy at law against his brother, Stephen Suckle.

■ We reject appellant's arguments. Appellant has confused the concept of an equitable lien with that of the equitable right of subrogation. Subrogation is the substitution of one person in the place of another in relation to a demand, claim, or right. The equitable doctrine of subrogation holds that where a person, other than the principal obligor, pays a mortgage indebtedness on land in which he has an interest, equity will substitute him in place of the original mortgagee, and vest that mortgagee's rights in him. *First Nat'l Bank of Houston v. Ackerman*, 70 Tex. 315, 8 S.W. 45, 47 (1888); *Johnson v. Koenig*, 353 S.W.2d 478, 483 (Tex. Civ.App.—Austin 1962, writ ref'd n.r.e.). He may keep alive and enforce the lien insofar as is necessary for his protection. *Id.*

■ An equitable lien, however, is one in which a court of equity implies a agreement arising out of the relationship of the parties and the circumstances of their dealings. *Vivion v. Nicholson*, 54 Tex.Civ.App. 43, 116 S.W. 386, 388 (1909, no writ); *Bray v. Curtis*, 544 S.W.2d 816, 819 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The foundation of every equitable lien is a contract, either express or implied, which deals with or operates on some specific property; but the contract must be made by some authorized person, or arise by implication from his acts,

before a lien in equity can be created against the property of a person to be affected by it. *Vivion,* 116 S.W. at 388.

Barry Suckle did not have a lien; he was substituted in place of the original mortgagee when he paid off Stephen Suckle's share of the property. Thus there was no need for Barry Suckle and Stephen Suckle to have a written agreement that his advancement of funds to pay for the land was to be a "lien" against the property. A written instrument securing the "lien" against the property was unnecessary. Nor, as appellant asserts, was the "lien" little more than the right of a creditor against Stephen Suckle.

Appellant argues that Barry Suckle had an adequate remedy at law against his brother, and therefore the trial court should not have permitted him to foreclose her interest. The law is quite clear: by paying the debt of another person, the payor only acquires the right of subrogation, and that right *must* be affirmatively asserted by judicial proceedings before an equitable assignment can actually take place. *Johnson v. Koenig,* 353 S.W.2d 478, 483 (Tex.Civ.App.— Austin 1962, writ ref'd n.r.e.) (emphasis added). In order to assert his rights, Barry Suckle had to judicially foreclose. We overrule appellant's first four points of error.

In her fifth point of error, appellant argues that the trial court erred in awarding appellee foreclosure against her interest because her foreclosure cut off appellee's rights. Appellant is mistaken. A foreclosure cuts off only the rights of junior lien holders. The vendor's lien to which Barry Suckle was subrogated came into existence in 1985. Appellant's deed of trust was created in 1988. Hence, the original vendor's lien was superior to appellant's. Appellant's inferior interest could not cut off Barry Suckle's superior rights.

The only serious defense to Barry Suckle's right of subrogation which could have been raised by appellant was that she was a good faith purchaser for value (sometimes referred to as a bona fide purchaser for value). A good faith purchaser for value will prevail over the holder of prior equitable

title. *NRG Exploration, Inc. v. Rauch,* 671 S.W.2d 649, 653 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

In order to qualify as a good faith purchaser, appellant must demonstrate that (1) the purchase was made in good faith, (2) for valuable consideration, and (3) made without *actual or constructive knowledge of any outstanding claims of any third party. Id.* Appellant had actual notice of Barry Suckle's prior legal interest in the land and was not a good faith purchaser for value. Stephen Suckle hired appellant to write a motion for new trial regarding this very suit over the land. Thus, appellant clearly knew that Barry Suckle was suing Stephen Suckle because his brother did not pay his share of the note to Land Futures, Ltd., and, further, that Barry Suckle had paid his brother's interest. As an attorney, appellant should have realized that this would give Barry Suckle an equitable right of subrogation which he could choose to exercise at any time through a judicial proceeding. We overrule appellant's fifth point of error.

In her final point of error, appellant asserts that the court erred in awarding attorney's fees to appellee because there was no privity between the parties to the contract under which appellee asserted a claim for fees. When appellant foreclosed on Stephen Suckle's interest in the property, she assumed all obligations associated with the land, including attorney's fees. *See, La–Rey, Inc. v. Kowalski,* 433 S.W.2d 530, 534 (Tex. Civ.App.—San Antonio 1968, no writ). We overrule appellant's final point of error.

Appellant filed two motions with this Court. The first, filed September 23, 1993, was styled "Motion for Order for Court Reporter to Sign Affidavit or Produce Richards' and Casperson's Exhibits." The second, filed October 26, 1993, was styled "Motion to Reverse and Remand for a New Trial Pursuant to Rule 50(e) of the Texas Rules of Appellate Procedure." Both motions are predicated upon appellant's claim that the court clerk was unable to locate her exhibits which she requested be filed with the transcript. *See,* TEX.R.APP.P. 50(e). We elected

to take both of appellant's motions with the case.

In support of both motions, appellant included as exhibits copies of letters allegedly sent to the court clerk requesting that the statement of facts be prepared. Appellant alleges that the letters were sent on or about October 24, 1992. The letters appellant included as an exhibit in each motion, however, bear the dates September 20, 1993, and October 25, 1993, respectively. This curious discrepancy makes it impossible for this court to determine if or when appellant actually requested that the statement of facts be filed. Appellee argues that appellant never timely filed a request that a statement of facts be prepared, and further points out that it was he who requested that the statement of facts, which did not include any exhibits, be prepared and filed.

The burden is on the party seeking review to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP.P. 50(e) (Vernon Pampl. 1992). Appellant has wholly failed in this respect. Appellant has failed to demonstrate that she timely requested that her exhibits be prepared and filed as part of the transcript on appeal. Appellant has also failed to demonstrate that, as required by Rule 50(e), she attempted to substitute her exhibits in the trial court.

Even if we were inclined to give appellant the benefit of the doubt, we hold that Rule 50(e) does not support her contentions. We simply do not read Rule 50(e) to mean that in every instance where a part of the record has been lost that the aggrieved party is entitled to a new trial. If the portion of the record which is lost cannot change the outcome of the case, to remand the cause for a new trial would not be judicially economical.

An index of the exhibits indicates that appellant's exhibits included several pleadings, a notice of lis pendens, a certified copy of her deed of trust, appraisal and tax rates, and various letters. The most significant of appellant's exhibits was her deed of trust. Nevertheless, Barry Suckle's exhibits clearly demonstrate that he had a superior lien and properly foreclosed upon it. The testimony of witnesses showed that appellant's deed of trust came into existence after the deed of trust and vendor's lien to which Barry Suckle's rights were subrogated was created. Appellant's interest was junior to that of appellee. Appellant's exhibits would not have changed the outcome on appeal.

We overrule appellant's two motions. We affirm the judgment.