# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00221-CV

**William Cody Wheeler, Appellant**

**v.**

**Howard L. Phillips (as Independent Executor of the Estate of Freddie Lee Phillips, Deceased); Michael Ball (as Independent Executor of the Estate of James Robert Ball, Deceased); Floyd Brown; Constantine Shah; Theodore Alverson; James Alverson; Ebony Harris; and the Unknown Heirs of Ben Jones, Sr., Francis Wallace Jones, Jordan Jones, Ruby Houston, Rusty Meeks and Josie Matthews Jones, Appellees**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 24,642, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This suit involves the partition of 82.201 acres of real property located in Bastrop County (the "Property"). *See* Tex. Prop. Code Ann. § 23.001 (West 2000); Tex. R. Civ. P. 756-771.[1] After several hearings, the trial court found that the Property was not susceptible to fair and equitable partition in kind and signed a decree of partition by sale. *See* Tex. R. Civ. P. 770. In the decree, the trial court identified the joint owners of the Property and their respective proportionate interests; awarded money judgments for attorney's fees and property taxes paid; awarded postjudgment

---

[1] Section 23.001 of the property code provides that "[a] joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants under this chapter and the Texas Rules of Civil Procedure." Tex. Prop. Code Ann. § 23.001 (West 2000).

interest; created equitable liens against the Property; and appointed a receiver to conduct the sale of the Property.

On appeal, William Cody Wheeler, the joint owner of the Property with the largest proportionate interest, challenges the trial court's characterization of the Property as community property and its corollary findings identifying the joint owners and their proportionate interests. Wheeler also challenges the trial court's finding that the Property is not susceptible to fair and equitable partition in kind, its awards of money judgments and postjudgment interest, and its creation of equitable liens against the Property. For the reasons that follow, we affirm the decree.

**BACKGROUND**

The Property consists of three undeveloped tracts in Bastrop County. The tracts are separated by roads, one of which is Highway 71. Each of the parties claims an undivided interest in the Property. Appellees claim their interests in the Property through inheritance from descendants of Ben and Francis Jones. Ben and Francis Jones were married in 1877, and Ben Jones acquired the Property by two separate warranty deeds in 1895 and 1896. Francis Jones died intestate in 1911, and Ben Jones died in 1934. Ben and Francis Jones had 11 children, 22 known grandchildren, and 17 known great grandchildren.

Ben Jones executed a will in 1931. In his will, Ben Jones made a specific bequest of the Property to four of his children, Ida Jones Houston, Mattie Jones, Willie Jones, and Eula Jones.[2] Mattie Jones offered her father's will for probate in 1934, and, as part of the

_____

[2] Because Eula Jones predeceased her father, her interest in the Property passed to the three other named children pursuant to the terms of her father's will.

2

proceeding, the probate court approved an inventory of his estate. The inventory lists the Property as his separate property. Mattie Jones was the last surviving child of Ben and Francis Jones, and she was responsible for the Property, including paying taxes, until her death in 1990.

Wheeler claims his interest through purchases. He began purchasing interests in the Property in 1998 and continued during the pendency of this suit. Wheeler purchased interests from heirs of Ida Jones Houston, Mattie Jones, and Willie Jones, the three children who received the bequest of the Property in Ben Jones's will. Although none of the deeds by which Wheeler acquired title specified the percentage ownership conveyed, appellees do not dispute that Wheeler has at least a 77.947% undivided interest in the Property.

In 2003, Freddie Lee Phillips and James Robert Ball filed a petition to declare interests, for restitution, and for partition of the Property against Wheeler and known and unknown heirs of decedents of Ben and Francis Jones.[3] They alleged that the identity of the joint owners and their respective proportionate interests in the Property remained unknown. They sought restitution for costs and expenses incurred for the common benefit of the joint owners, including attorney's fees for the prosecution of the action and payments to protect the Property from being sold for unpaid taxes.

The trial court held evidentiary hearings in June and December 2009 and January 2010. The trial court's threshold issue was who were the joint owners of the Property. *See*

---

[3] Both James Robert Ball and Freddie Lee Phillips died during the pendency of this suit. James Robert Ball was survived by his son, appellee Michael Ball, who is the independent administrator of his father's estate. Freddie Lee Phillips was survived by her heir at law appellee Howard L. Phillips who is the independent administrator of her estate.

3

Tex. R. Civ. P. 760 ("Upon the hearing of the cause, the trial court shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise."). The determination of this issue depended on whether the Property was part of the community estate of Ben and Francis Jones or the separate property of Ben Jones. *See* Tex. Const. art. XVI, § 15 (separate and community property defined).

The primary issue at the June hearing then was whether the Property was community or separate property. Evidence admitted included the warranty deeds from 1895 and 1896, the marriage license of Ben and Francis Jones, and recorded documents concerning the probate of Ben Jones's will and the appointment of Ben Jones as the temporary administrator of his wife's estate. An affidavit of heirship of Francis Jones, recorded in 1978, and executrix's deeds, recorded in 1996, also were admitted into evidence. The affiants averred that the Property was the community property of Ben and Francis Jones. The Executrix's deeds were recorded in connection with the administration of the estate of Ella B. Jones, the wife of Ira James Jones, a grandchild of Ben and Francis Jones. The deeds conveyed Ella B. Jones's undivided interest in the property to Freddie Lee Phillips and James Robert Ball. At the conclusion of the June hearing, the trial court found that the Property was part of the community estate of Ben and Francis Jones.

At the December 2009 hearing, the trial court received evidence as to who were the current joint owners and their proportionate interests. The evidence admitted included the deposition transcript of James Robert Ball, death certificates of heirs of Ben and Francis Jones, a family tree, and a spreadsheet detailing and summarizing the proportionate interests of the heirs of Ben Jones.

4

The parties also presented evidence concerning their claims for reimbursement of fees and expenses incurred for the benefit of the joint owners. Notices of delinquent taxes on the Property were admitted as exhibits, and the attorneys representing Jones family members also advised the court concerning the legal services that they had provided and the costs of those services.[4]

The primary issue at the January 2010 hearing was whether the Property should be partitioned by sale or in kind. The only witness to testify was Wheeler. He testified that the Property was "easily divisible" and that he did not want the Property partitioned by sale. He also testified concerning his various purchases of interests in the Property. He continued to purchase interests in the Property during the pendency of this suit. A survey obtained by Wheeler also was admitted as evidence. The survey shows that the three tracts are separated by roads, one of which is Highway 71, and that portions of the Property are within a flood plain and subject to easements.

The trial court found that the Property was not susceptible to fair and equitable partition in kind and signed a decree of partition by sale. In the decree, the trial court appointed a receiver to sell the Property and awarded money judgments against each of the joint owners based upon their respective proportionate interests. The judgments were for legal services rendered by the parties' attorneys and for costs incurred by joint owners, including the survey cost and tax payments, plus postjudgment interest. The trial court created equitable liens to enforce the payment of

---

[4] Wheeler and a lessee of the Property also testified at the December hearing. The lessee testified that he had been keeping cattle on the Property for "almost twenty years" and continued to do so but that he had not made lease payments. The lessee initially was a named defendant in this suit because of a mechanic's and materialmen's lien that he had filed against the Property. The trial court found that the mechanic's and materialmen's lien was not valid, and the lessee is not a party on appeal.

the money judgments.  The trial court also made findings of fact and conclusions of law.  This appeal followed.

## ANALYSIS

Wheeler raises three issues on appeal.  Wheeler contends that the trial court erred in its finding that the Property was part of the community estate of Ben and Francis Jones and, therefore, in its related findings concerning the joint owners and their proportionate interests.  He further contends that partition in kind by a panel of commissioners is required and that the awards of attorney's fees, reimbursement for tax payments, liens, and postjudgment interest are not appropriate in this case.

### *Standard of Review*

Wheeler's issues challenge the trial court's findings of fact and conclusions of law.  We review a trial court's conclusions of law de novo and will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence.  *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct.  *Id*.  We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied to a jury verdict.  *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

A legal sufficiency challenge may be sustained when the record discloses one of the following situations:  (i) a complete absence of evidence of a vital fact; (ii) the court is barred by

6

rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (iii) the evidence offered to prove a vital fact is no more than a mere scintilla; or (iv) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Id*. at 807. We indulge every reasonable inference that would support the finding. *Id*. at 822. When considering a factual sufficiency challenge, the reviewing court considers all of the evidence and "should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

***Did the trial court err in determining that the Property was community property?***

In his first issue, Wheeler challenges the trial court's finding that the Property was part of the community estate of Ben and Francis Jones, and, therefore, its findings determining the identity and proportionate interests of the joint owners. The issue arises because, if the Property was part of the community estate, the law at the time of Francis Jones's death provided that her one-half interest in the Property passed to her eleven children. *See* William W. Gibson, Jr., Inheritance of Property in Texas—A Need for Reform, 47 Tex. L. Rev. 359, 361-62 (1969). If, however, the Property was Ben Jones's separate property as Wheeler contends, only Ida Jones Houston, Mattie Jones, and Willie Jones inherited the Property under the terms of his will. Based upon his purchases from heirs of these three children, Wheeler contends that his proportionate interest in the Property is 89.731%, not 77.947% as found by the trial court.

7

Wheeler specifically challenges the sufficiency of the evidence to support the following findings of fact and conclusions of law relevant to the trial court's determination that the Property was community property:

- That no evidence was produced to show that the Property was purchased with the separate property of Ben Jones, Sr.

- That there was a presumption under Texas law, when the property was acquired, that any property acquired during marriage is community property of that marriage.

- That no evidence was presented to rebut the community property presumption.

- That the Property was part of the community estate of Ben Jones, Sr., and Francis Wallace Jones.

- As of January 8, 1911, the date Francis Wallace died intestate, the Property was presumed to be the community property of Ben Jones, Sr. and Francis Wallace Jones. The Court has not received sufficient evidence to rebut such presumption and, therefore, as a matter of law, upon the death of Francis Wallace Jones, the Property was the community property of Ben Jones, Sr. and Francis Wallace Jones.

He also challenges the trial court's related findings identifying the joint owners and their proportionate interests.

"The characterization of property as either community or separate property is determined by the inception of title to the property." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). Property owned or claimed by a spouse before marriage and property acquired during marriage by gift, devise, or descent is the separate property of that spouse. Tex. Const. art. XVI, § 15. "Community property consists of the property, other than separate

8

property, acquired by either spouse during marriage." Tex. Fam. Code Ann. § 3.002 (West 2006); *see Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Property possessed by either spouse during or on the dissolution of marriage is presumed to be community property. *See* Tex. Fam. Code Ann.§ 3.003(a) (West 2006); *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.). "This presumption applies not only to dissolution by divorce, but also by death." *Irvin*, 139 S.W.3d at 708; *see Smith v. Lanier*, 998 S.W.2d 324, 331 (Tex. App.—Austin 1999, pet. denied).

To overcome the community property presumption, a party claiming property as separate property must establish by clear and convincing evidence the separate character of that property through tracing. Tex. Fam. Code Ann. § 3.003(b); *Irvin*, 139 S.W.3d at 708. "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Boyd*, 131 S.W.3d at 612 (citing *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied)). "Whether the presumption as to the community character of marital property is overcome is a question for [the factfinder]." *Lanier*, 998 S.W.2d at 332 (citation omitted). "We resolve any doubt as to the character of property in favor of the community estate." *Irvin*, 139 S.W.3d at 708.

Further, because the burden of proof at trial is clear and convincing evidence, we apply higher standards of legal and factual sufficiency review. The clear and convincing standard is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). "In reviewing the

9

evidence for legal sufficiency, we must determine 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction' that the separate property characterization was proven." *See Irvin*, 139 S.W.3d at 709 (quoting *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002)). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* (citing *J.F.C.*, 96 S.W.3d at 266). In reviewing the factual sufficiency of the evidence to support that a finding was proven by clear and convincing evidence, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). In light of the entire record, evidence is factually insufficient if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction. *Id.*

Wheeler does not challenge the trial court's findings that Ben and Francis Jones were married in 1877 and that Ben Jones acquired the Property by two separate warranty deeds approximately 18 years after the Joneses married. The deeds recite that the Property was paid, in part, by promissory note, and the Joneses did not dispose of the Property prior to their deaths. There also was no tracing evidence to support that Ben Jones used separate property, such as an inheritance, to purchase the Property. *See Boyd*, 131 S.W.3d at 612. Further, the affidavit of heirship of Francis Jones, recorded in 1978, and the executrix's deeds, recorded in 1996, were consistent with the conclusion that the Property was the community property of Ben and Francis Jones. This evidence supports the trial court's findings concerning its characterization of the Property as community property.

10

Wheeler urges that appellees are procedurally barred from challenging the probated will of Ben Jones and that "finality of judgments" and "ancient documents" prove that the property was his separate property. *See* Tex. R. Evid. 803(16) ("[s]tatements in a document in existence twenty years or more the authenticity of which is established" are not excluded by the hearsay rule). Wheeler focuses on documents recorded in Bastrop County in connection with the estates of Ben and Francis Jones. In his request to be appointed temporary administrator of his wife's estate, Ben Jones stated that his wife "left a personal estate of the value of $500.00," and he did not list any real property. In his probated will, he made a specific bequest of the Property. Ben Jones's will was not contested, the probate court approved the inventory listing the Property as separate property, and appellees do not challenge his will or bring a constructive trust claim. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 497 (Tex. 2010) (bill of review action to set aside judgments and reopen estates to declare heir barred by limitations); *Tarver v. Tarver*, 394 S.W.2d 780, 784 (Tex. 1965) (constructive trust claims discussed).

Wheeler, however, did not plead res judicata or limitations as affirmative defenses and, therefore, has waived these defenses. *See* Tex. R. Civ. P. 94; *G.R.A.V.I.T.Y. Enters. v. Reece Supply Co.*, 177 S.W.3d 537, 544 (Tex. App.—Dallas 2005, no pet.) (affirmative defense of limitations waived if not pleaded); *Garner v. Long*, 106 S.W.3d 260, 264 (Tex. App.—Fort Worth 2003, no pet.) (affirmative defense of res judicata waived if not pleaded).

Further, even if he had not waived these defenses, the fact that appellees do not contest or seek to set aside Ben Jones's will or seek a constructive trust is not dispositive. An inventory filed in probate court is not conclusive proof of the title therein listed, and an order of the

11

probate court approving an inventory and appraisement does not adjudicate title. *See McKinley v. McKinley*, 496 S.W.2d 540, 542-44 (Tex. 1973) (despite contrary probate order approving inventory as separate property, community property finding by trial court affirmed; petitioner made no attempt to trace source of funds and, therefore, did not overcome community property presumption); *see also* Tex. Prob. Code Ann. § 261 (West 2003) (approved inventory not "conclusive for or against" representative of estate); Tex. Prop. Code Ann. § 5.001 (West 2003) ("An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law."); *Adams v. Sadler*, 696 S.W.2d 690, 692 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (probate court lacks jurisdiction to determine title); *cf. Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (collateral attack not available to challenge division of property in final divorce decree based upon incorrect characterization of community property).

Moreover, without tracing evidence, "mere testimony" concerning the character of property as separate property generally is insufficient to overcome the community property presumption. *Irvin*, 139 S.W.3d at 710; *Zagorski*, 116 S.W.3d at 316. Given that there was no tracing evidence concerning inception of title, we conclude that the trial court did not err in finding that Wheeler failed to defeat the community property presumption.

As part of this issue, Wheeler also argues that, even if the Property was community property, Francis Jones's interest passed to her husband based upon the retroactive application of amendments to section 45 of the probate code. Section 45 was amended in 1993 to provide that community property passes to the surviving spouse, not to the spouses' children. *See* Act of

12

May 28, 1993, 73rd Leg., R.S., ch. 846, § 33, 1993 Tex. Gen. Laws 3337, 3351 (current version at Tex. Prob. Code Ann. § 45 (West 2003)). If section 45 as amended applies, the Property would pass under Ben Jones's will whether or not the Property was community property. Sections 35 and 36 of the 1993 act, however, expressly provide that the "Act takes effect September 1, 1993," and that the "estate of a person who dies before the effective date of this Act is covered by the law in effect when the person died, and the former law is continued in effect for that purpose." *See id*. §§ 35, 36, 1993 Tex. Gen. Laws at 3352; *see* Tex. Gov't Code Ann. § 311.022 (West 2005) ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); *Frost Nat'l Bank*, 315 S.W.3d at 507 (citing *Dickson v. Simpson*, 807 S.W.2d 726, 727 (Tex. 1991)) (only statutes in effect at time of death govern disposition of an estate). Given that Francis Jones died more than eighty years before section 45 was amended in 1993, we conclude that its amendment does not govern the disposition of her estate. We overrule Wheeler's first issue.[5]

---

[5] To the extent Wheeler argues that he holds record title to an 89.731% undivided interest of the Property and that his record title should prevail over appellees' claims, the evidence does not support that he was a good faith purchaser. *See Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied) ("'[R]ecord title' means title as it appears in the public records after the deed is properly recorded."); *Richards v. Suckle*, 871 S.W.2d 239, 242 (Tex. App.—Houston [14th Dist.] 1994, no pet.) ("A good faith purchaser for value will prevail over the holder of prior equitable title."). A party is a good faith purchaser for value if the purchase was made in good faith, for valuable consideration, and without actual or constructive notice of any outstanding claims by third parties. *See Suckle*, 871 S.W.2d at 242.

Wheeler purchased his interests in the Property with deeds that do not specify the proportionate interest conveyed, he did not present evidence to support that he paid valuable consideration, and he was on notice of appellees' claim that the Property was part of the community estate of Ben and Francis Jones when he began purchasing interests in the Property. *See* Tex. Prop. Code Ann. § 13.002 (West 2004) (instrument properly recorded is "notice to all persons of the existence of the instrument"). The affidavit of heirship of Francis Jones was recorded in 1978, the executrix's deeds were recorded in 1996, and Wheeler did not begin purchasing interests in the

13

***Did the trial court err by ordering partition by sale?***

In his second issue, Wheeler contends that the trial court erred by ordering partition by sale and that partition in kind by a panel of commissioners is required in this case. *See* Tex. R. Civ. P. 761. As the majority interest owner, Wheeler urges that the Property is unique and that the trial court's ruling is unfair because the practical effect of the ruling is that he will be forced to purchase the minority interests in order to maintain his interest in the Property.

Wheeler specifically challenges the legal and factual sufficiency of the evidence to support the following findings of fact and conclusions of law concerning the partition of the property:

- The Court takes judicial notice that land which contains highway frontage is significantly more valuable than land that does not contain highway frontage.

- The Court takes judicial notice that land within a flood plain is less valuable than land that is not within a flood plain.

- The Court takes judicial notice that land which contains curb cuts affording access to a public road is more valuable than land without such curb cuts.

- The Court takes judicial notice that Property encumbered by easements is less valuable than a land free of easements.

- Based upon the evidence presented to the Court, including, without limitation, the survey, the Property is not susceptible to fair and equitable partition in kind.

- Pursuant to Texas Rules of Civil Procedure Rule 770, if the Court is of the opinion that the Property is not susceptible to fair and equitable partition in kind, the Court must appoint a receiver to conduct a partition by sale.

---

Property until 1998. Wheeler also continued to purchase interests in the Property during the pendency of this suit.

14

Wheeler contends that the trial court improperly took judicial notice of the impact of geographical features on the value of real property. *See* Tex. R. Evid. 201.[6] Wheeler, however, does not challenge the trial court's related findings that the survey shows that "US Highway 71, a four-lane divided highway, runs through the Property," "the Property does not contain any curb cuts affording access to US Highway 71," "portions of the Property are encumbered by a number of different easements," "portions of the Property contain significant highway frontage on US Highway 71," and that "portions of the Property are within a flood plain."

The trial court shall order partition if it "determines that the whole, or any part of such property is susceptible of partition." Tex. R. Civ. P. 761. "The law favors partition in kind over partition by sale." *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.). Whether property "can fairly be partitioned in kind is a question of fact." *Id*. The party opposing partition in kind and seeking partition by sale bears the burden of proving "an in-kind partition would not be fair." *Id*. at 853-54. The party need not show that partition in kind is physically impossible, but that partition would be impractical or unfair. *Id.* at 855. "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition." Tex. R. Civ. P. 770.

---

[6] Texas Rule of Evidence 201 governs judicial notice of adjudicative facts. The rule provides that a trial court may take judicial notice of an adjudicative fact, whether requested or not by a party, if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201(b), (c).

In addition to Wheeler's interest, the trial court found that there are multiple joint owners as well as unknown joint owners with interests ranging from 3.611% to 0.700%. The record shows that the parties tried but failed to agree to a division of the Property between Wheeler and appellees. The trial court admitted the survey obtained by Wheeler, and he has not challenged the trial court's findings of what the survey shows. Further, to the extent that Wheeler challenges the trial court's judicial notice of the impact of geographical features on the value of portions of the Property, Wheeler's attorney at the hearing agreed that frontage property is more valuable and that real property encumbered by an easement or located within a flood plain has less value. The evidence also showed that the value of the Property was uncertain. Wheeler testified that the Property was valued at $2.4 million by the Bastrop County Appraisal District, that there was a lack of comparable sales, and that he "might go as much as" $10,000 per acre. This evidence is some evidence to support the trial court's finding that the property was not susceptible to an equitable partition in kind. *See City of Keller*, 168 S.W.3d at 810; *see also Taplin v. Peach Creek Partners, Ltd.*, No. 10-06-00371-CV, 2007 Tex. App. LEXIS 9757, at *5-6 (Tex. App.—Waco Dec. 12, 2007, pet. dism'd) (mem. op.) (partition by sale affirmed); *Fite v. Wilson*, No. 06-05-00131-CV, 2006 Tex. App. LEXIS 5812, at *8-10 (Tex. App.—Texarkana July 6, 2006, no pet.) (mem. op.) (same).

Moreover, although Wheeler testified that the Property was "easily divisible" and that he did not want to sell the Property, we cannot conclude that the trial court's finding is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176. We conclude then that the evidence is legally and factually sufficient to support the trial

16

court's finding that the Property was not susceptible to an equitable partition in kind and, therefore, that the trial court did not err in ordering the Property partitioned by sale. *See* Tex. R. Civ. P. 770; *Cecola*, 12 S.W.3d at 855. We overrule Wheeler's second issue.

***Did the trial court err by awarding money judgments against the joint owners, creating liens against the Property, and awarding postjudgment interest?***

In his third issue, Wheeler urges that the trial court erred by awarding attorney's fees and expenses, reimbursement of tax payments, and postjudgment interest and by creating liens against the Property. He again challenges the sufficiency of the evidence to support the trial court's findings of fact and conclusions of law concerning the money judgments and the equitable liens.[7]

The trial court found that James Robert Ball paid $7,608.48 and Freddie Lee Phillips paid $7,608.48 in real property taxes for the tax years 1998 through 2007 and that these payments were for the "common benefit of the Joint Owners." The trial court also found that the parties' attorneys had rendered legal services for the "common benefit of the Joint Owners," that the fees were "reasonable and necessary," and that it was "equitable and just that their attorney's fees be paid by the Joint Owners in accordance with their respective Proportionate Interests in the Property." The trial court rendered judgments against the joint owners in proportion to their percentage of ownership and created equitable liens against the Property for the amounts of the tax payments and the attorney's fees. The trial court awarded $7,608.48 in favor of Michael Ball, $7,608.48 in favor of Howard S. Phillips, $10,000 in favor of the attorney representing Phillips and Ball, $10,000 in favor of the attorney representing the other appellees, $10,000 in favor of the attorney representing

_____

[7] Wheeler does not challenge the trial court's award of a money judgment and creation of an equitable lien in his favor for the survey costs.

17

Wheeler before the trial court, and $5,000 in favor of the attorney ad litem for the unknown heirs. The trial court further awarded postjudgment interest on these amounts.

A party generally may not recover its attorney's fees in a partition suit. *See Cecola*, 12 S.W.3d at 856. The trial court, however, found that "[t]his case is a proceeding under Chapter 37 of the Texas Civil Practice and Remedies Code" and that, pursuant to section 37.009, "the Court may award reasonable and necessary attorney's fees as are equitable and just." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).[8] We review attorney's fees awarded pursuant to the UDJA under an abuse of discretion standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A trial court abuses its discretion when it acts unreasonably or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

---

[8] Appellees also contend and the trial court found that the incurred attorney's fees were recoverable under the equitable common fund doctrine. *See Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex. 1974); *see also Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (applicability of common fund doctrine discussed); *Martin-Simon v. Womack*, 68 S.W.3d 793, 797-98 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("The Texas Supreme Court has adopted a 'common fund' equitable exception to the general rule prohibiting recovery of attorney's fees absent contractual agreement or statute."); *Libhart v. Copeland*, 949 S.W.2d 783, 803-04 (Tex. App.—Waco 1997, no writ) (judgment requiring property sold and percentage of proceeds paid to parties' attorney upheld under common fund doctrine; "The doctrine usually has application where a plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class . . . .'" (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)). This doctrine "rests in equity" and allows a complainant who at his own expense has maintained a successful proceeding for the preservation, protection, or increase of a common fund or property to recover an equitable award of his proportionate expenses, including attorney's fees and costs, against joint owners. *Knebel*, 685 S.W.2d at 798-99. "The equitable objective is that of distributing the burden of such expenses among those who share in an accomplished benefit." *Id*. at 799. Because we uphold the awards under the UDJA, we do not reach this alternative ground. *See* Tex. R. App. P. 47.1.

18

In addition to seeking a partition of the property, appellees sought declaratory relief. *See EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.—San Antonio 2007, pet. denied) (party seeking declaratory relief that is separate from a land title dispute may recover attorney's fees under the UDJA).[9] The record shows that appellees were "interested as or through" heirs in the estates of Ben and Francis Jones and sought a judicial determination as to the heirs of the estates and construction of Ben Jones's will and "other writings." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.005. They also sought declarations as "persons interested" under certain deeds and Ben Jones's will and "whose rights, status, or other legal relations" were "affected by a statute." *See id.* § 37.004(a) (subject matter for declaratory relief).

As part of his challenge to the trial court's award of attorney's fees, Wheeler challenges the trial court's finding that appellees' attorney's fees benefited the joint owners. But the record shows that a primary objective of this suit was to restore marketable title to the Property by identifying the Property's joint owners. To reach this objective, the threshold issue was who were the heirs of Ben and Francis Jones, requiring research and analysis of records spanning over 60 years. The record shows that only Ben Jones, his grandson Ira Jones, and his grandson's wife, Ella Jones, devised their interests in the Property. The remaining descendants of Ben and Francis Jones passed their interest in the Property by intestate succession, requiring the trial court to make a determination

---

[9] We note that Wheeler did not urge at the trial court or to this Court that appellees' claim for declaratory relief was in essence an action for trespass to try title. *See Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320-21 (Tex. App.—Amarillo 2001, pet. denied) (any error in permitting trespass-to-try-title claim under UDJA may be waived absent objection to that procedure); *see also Archaeological Conservancy v. Wilson Land & Cattle Co.*, No. 03-08-00061-CV, 2010 Tex. App. LEXIS 2385, at *16 n.5 (Tex. App.—Austin Mar. 30, 2010, no pet.) (mem. op.).

19

of heirship for the deceased heirs. Appellees' attorneys researched, analyzed, and then prepared a detailed summary of the heirs of Ben and Francis Jones and their proportionate interests in the Property. The trial court utilized this information to determine the joint owners and their proportionate interests.[10]

To the extent Wheeler challenges the amount of the attorney's fees awarded, at the December 2009 hearing, the attorney representing Phillips and Ball advised the court that her clients had incurred attorney's fees "in the neighborhood of $10,032." The attorney representing the other appellees stated that his fees over the course of the six years that the case was pending were $39,000 based upon 206.50 hours plus fees of $1,400. The attorney ad litem for the unknown heirs had no objection to the other appellees' attorney's fee requests, stating that "all parties have benefitted from clearing up the title to a very valuable piece of property out on the highway that has been rendered just stale and useless for a very long time" and that it was "a complicated problem." On this record, we cannot conclude that the trial court abused its discretion by awarding money judgments against the joint owners in their proportionate shares for attorney's fees or in the amount of the awards.

As to the money judgments for reimbursement of tax payments, Wheeler contends that it is inequitable for the current joint owners to be liable for reimbursement of taxes that were paid by previous alleged co-tenants.[11] Wheeler states that he purchased most of his interests in the

---

[10] This case was filed in 2003. Wheeler represented himself and appeared pro se at the June 2009 hearing. He was not represented by counsel in this suit until later in 2009.

[11] Wheeler also contends that, if appellees Ball and Phillips are adjudged not to have interests in the Property, they are not entitled to reimbursement because they were volunteers. *See Burkhardt v. Lieberman*, 159 S.W.2d 847, 853 (Tex. 1942). Given our conclusion that they had interests in the

20

Property in 2007, and the trial court found that the tax payments were for the tax years 1998 to 2007. Wheeler fails to cite authority to support this contention and, therefore, has waived it. *See* Tex. R. App. P. 38.1(i); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 885 (Tex. App.—Austin 2010, pet. denied); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Further, even if he did not waive this contention, James Robert Ball, Freddie Lee Phillips, and Wheeler were co-tenants of the Property. "A co-tenant who incurs expense for the necessary preservation of property is entitled to reimbursement from her co-tenant." *See Bailey-Mason v. Mason*, 334 S.W.3d 39, 45 (Tex. App.—Dallas 2008, pet. denied). The record shows that James Robert Ball and Freddie Lee Phillips began making the tax payments only after receiving notices of delinquent taxes, that Wheeler had an interest in the Property beginning in 1998, and that he was aware of the payments of the property taxes prior to and during the pendency of this case. In his deposition, James Robert Ball testified that he attempted to obtain assistance on the tax payments from other heirs and that the decision to pay the delinquent taxes was to avoid a "sheriff sale" of the Property. Some of the joint owners of the Property remained unknown, their proportionate interests remained uncertain during the pendency of this case, and the record shows that the Property's value far exceeds the tax payments. Preserving ownership of the Property by paying the taxes benefited the current joint owners. On this record, we cannot conclude that the trial court erred in awarding money judgments against the current joint owners for their proportionate share of the tax payments.

_____

Property, we do not address this argument.

21

As to Wheeler's remaining challenges to the equitable liens and postjudgment interest awards, Wheeler has failed to cite authority to support his contentions and, therefore, has waived them. *See* Tex. R. App. P. 38.1(i); *Save Our Springs Alliance, Inc.*, 304 S.W.3d at 885. Further, even if he had not waived these contentions, we cannot conclude that the trial court erred in creating equitable liens or in awarding postjudment interest. *See* Tex. Fin. Code Ann. § 304.005 (West 2006) (generally "postjudgment interest on a money judgment . . . accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied"); *Chorman v. McCormick*, 172 S.W.3d 22, 24 (Tex. App.—Amarillo 2005, no pet.) ("Courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice."); *Richards v. Suckle*, 871 S.W.2d 239, 241 (Tex. App.—Houston [14th Dist.] 1994, no pet.) ("An equitable lien . . . is one in which a court of equity implies a[n] agreement arising out of the relationship of the parties and the circumstances of their dealings.").

We conclude that the evidence was sufficient to support the trial court's findings concerning the award of attorney's fees and property taxes and, therefore, that the trial court did not err in awarding money judgments in those amounts against the joint owners in proportion to their percentage of ownership. We also conclude that the trial court did not err by creating equitable liens or granting postjudgment interest. We overrule Wheeler's third issue.

## CONCLUSION

For these reasons, we affirm the trial court's decree.

22

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: July 28, 2011